UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ROLAND RICHARDSON,                              :
                Plaintiff,                :
v.                                              :    **OPINION AND ORDER**
                                                :
C.O. D. WILLIAMS and LT. J. WALSH,              :    15 CV 4117 (VB)
                Defendants.               :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Roland Richardson, proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983, alleging defendants corrections officer ("CO") Dwight Williams and Lt. Lawrence Walsh, employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), retaliated against him for exercising his First Amendment rights and violated his Fourteenth Amendment right to due process.

      Before the Court is defendants' motion for summary judgment. (Doc. #62).

      For the reasons set forth below, defendants' motion is GRANTED.

      The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

      The parties have submitted briefs, statements of material fact ("SOF"), and declarations with supporting exhibits, which reflect the following factual background.

      Plaintiff was incarcerated at Sing Sing Correctional Facility ("Sing Sing") at all times relevant to this action.

      Inmates at Sing Sing use so-called "Go Around" forms to sign up for daily programs and activities in which they would like to participate. On April 26, 2014, plaintiff signed up on a Go Around form to use the telephone located inside Housing Block B. However, CO Annisa Jones denied plaintiff access to the B Block "inside" telephone. Plaintiff then informed CO Mario

1

Gayle, the Q North End Gate Officer, that CO Jones had denied him access to the B Block inside phone. CO Gayle advised plaintiff to speak to his gallery officer, defendant CO Williams. Plaintiff explained the situation to CO Williams and informed CO Williams that it was urgent he be permitted to use the phone. CO Williams then granted plaintiff permission to use the B Block "yard" phone.

While waiting to use the yard phone, plaintiff complained to Sgt. Gina Shibah, who was responsible that day for supervising Housing Block B, that CO Jones had not permitted plaintiff to use the inside phone. Plaintiff also told Sgt. Shibah that CO Williams had given him permission to use the yard phone. Sgt. Shibah called CO Williams to confirm CO Williams had indeed given plaintiff permission to use the yard phone. Plaintiff claims Sgt. Shibah talked "loudly and aggressively" when speaking to CO Williams, which Sgt. Shibah and CO Williams both deny. (Am. Compl. ¶ 21; Shibah Decl. ¶¶ 4, 5; Williams Decl. ¶¶ 4). According to Sgt. Shibah, CO Williams verified plaintiff's story, and Sgt. Shibah agreed with CO Williams's decision to permit plaintiff to use the yard phone. (Shibah Decl. ¶¶ 4, 5).

On April 30, 2014, plaintiff returned to the Z Gallery, where his cell was located, from the facility's commissary via the center stairs located between the U and Z Galleries. CO Williams claims he had previously instructed plaintiff to enter the Z Gallery from an end gate, rather than the center stairs. CO Williams further claims he believed plaintiff may have had contraband at the time, and so he ordered plaintiff to comply with a pat frisk. Plaintiff failed to comply and instead "began speaking loudly to other inmates in an attempt to get them involved." (Williams Decl. ¶ 6). CO Williams claims he had to give plaintiff two additional direct orders to comply with a pat frisk before plaintiff complied. CO Williams also claims plaintiff lied to him by stating the Z Gallery end gate was closed, which CO Williams knew not to be true because he

2

had unlocked it himself. During the pat frisk, plaintiff protested and looked back at CO Williams repeatedly. CO Williams did not find contraband on plaintiff. CO Williams then ordered plaintiff to return to his cell, but plaintiff refused. According to CO Williams, plaintiff "looked [CO Williams] up and down in a threatening manner." (Id.). CO Williams says he raised his voice and again ordered plaintiff to return to his cell. Plaintiff then "protested and shouted for other inmates to speak on his behalf" before returning to his cell. (Id.).

As a result of this incident, CO Williams wrote up an Inmate Misbehavior Report, charging plaintiff with rules violations for threatening an officer, creating a disturbance, refusing a direct order, lying to an officer, failing to comply with a movement regulation, and failing to submit to a pat frisk. (Williams Decl. Ex. A).

According to plaintiff, all of the charges alleged in the misbehavior report "are lies" (Am. Compl. Ex. C), and CO Williams issued the misbehavior report against plaintiff in retaliation for being reprimanded by Sgt. Shibah for allowing plaintiff to use the yard phone on April 26, 2014.

DOCCS utilizes a three-tiered system for categorizing inmate misbehavior reports. Plaintiff's April 30, 2014, misbehavior report was categorized as a "tier III" offense and referred to a superintendent's hearing because the alleged violations, if substantiated, could result in a penalty of confinement to a cell or special housing unit for more than thirty days.

Tier III hearings are subject to a number of requirements under New York law, among them that the hearing must be recorded, 7 NYCRR § 254.6(a)(2), and the inmate must be allowed to submit relevant documentary evidence, id. § 254.6(a)(3), and call witnesses on his behalf, provided doing so is not redundant and does not jeopardize institutional safety or correctional goals, id. § 254.5(a).

3

Defendant Lt. Walsh conducted plaintiff's tier III hearing, which took place intermittently between May 6 and May 14, 2014.

Plaintiff claims Lt. Walsh offered him an off-the-record plea deal, which plaintiff rejected, pursuant to which plaintiff would have received a lighter "keeplock"[1] sentence if he pleaded guilty to the charges in the misbehavior report. Lt. Walsh states he does not recall offering plaintiff a plea deal.

At the conclusion of the tier III hearing, Lt. Walsh found plaintiff guilty of four out of the six charges against him; specifically, creating a disturbance, refusing a direct order, making threats, and refusing a search or frisk. Lt. Walsh found plaintiff not guilty of lying or movement violation because Lt. Walsh believed plaintiff erroneously thought the End Z gallery gate was actually locked, not because Lt. Walsh disbelieved CO Williams. Lt. Walsh sentenced plaintiff to 180 days of keeplock confinement, with a concurrent loss of commissary, packages, and phone privileges. Plaintiff served 90 days on keeplock, and 90 days of plaintiff's sentence were suspended.[2]

Plaintiff appealed Lt. Walsh's decision to Albert E. Prack, Director of Special Housing/Inmate Disciplinary Program; filed a grievance through DOCCS' inmate grievance program; and filed a complaint with the Inspector General's Office. Each of these efforts was unsuccessful.

Plaintiff then filed an Article 78 petition in Supreme Court, Albany County, alleging CO Williams issued the misbehavior report against plaintiff in retaliation for being reprimanded by

---

[1] Inmates on keeplock must remain locked in their cell all day, with the exception of one hour a day when they are allowed recreation apart from other inmates. (Defs.' SOF ¶ 48).

[2] According to DOCCS Directive 4932 § 254.7(a)(4), any such suspended penalty may be imposed by a subsequent disciplinary hearing or superintendent's hearing officer upon substantiating a charge of misbehavior or in a subsequent hearing within a specified period.

4

Sgt. Shibah for allowing plaintiff to use the yard phone, and Lt. Walsh conducted an unfair and biased tier III hearing in retaliation for plaintiff having refused the off-the-record plea offer.

While plaintiff's Article 78 petition was pending, his tier III hearing determination was administratively reversed and expunged from his record due to a failure to maintain a complete electronic record of the hearing.[3] Accordingly, plaintiff's Article 78 petition was dismissed as moot.

## DISCUSSION

I.    Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine

---

[3]     Lt. Walsh claims he recorded plaintiff's tier III hearing, but at some point following his delivery of the tapes to the discipline office at Sing Sing, the tapes were damaged. As a result, only the first day of the hearing, held on May 6, 2014, could be transcribed. (Walsh Decl. ¶ 25).

5

issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which she has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted). The "mere existence of a scintilla of evidence in support" of the non-moving party's position is likewise insufficient; "there must be evidence on which the jury could reasonably find" for it. Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial. Nora Bevs., Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.     First Amendment Retaliation Claims

Plaintiff asserts two separate First Amendment retaliation claims. First, plaintiff claims CO Williams wrote a false misbehavior report against him in retaliation for a supposed reprimand CO Williams received from Sgt. Shibah after plaintiff told Sgt. Shibah that CO Williams had allowed plaintiff to use the yard phone. Second, plaintiff claims Lt. Walsh retaliated against him by denying him due process at his tier III hearing because plaintiff had rejected a plea deal.

Defendants argue they are entitled to summary judgment on both claims because plaintiff has failed to make a sufficient showing of one of the essential elements of a First Amendment retaliation claim: causation.

The Court agrees.

"To prove a First Amendment retaliation claim under Section 1983, a prisoner must show that (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks omitted). The protected speech must be "a substantial or motivating factor for the adverse actions taken by prison officials." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003).

"Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted). Retaliatory acts that fail to meet this standard are "simply de minimis and therefore outside the ambit of constitutional protection." Id. Courts tailor the inquiry "to the different

7

circumstances in which retaliation claims arise, bearing in mind that prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse." Id. (internal quotation marks omitted).

Because of the "ease with which claims of retaliation may be fabricated," the Court "examines prisoners' claims of retaliation with skepticism and particular care." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).

A.  Retaliation Claim Against CO Williams

Assuming, without deciding, that plaintiff has satisfied the first two prongs of a First Amendment retaliation claim—i.e., that plaintiff engaged in protected speech or conduct and that CO Williams took an adverse action against plaintiff—CO Williams is entitled to summary judgment because plaintiff has failed as a matter of law to establish a causal connection between his protected speech and the alleged conduct of CO Williams.

Potential bases for establishing a causal connection include temporal proximity, a prior good disciplinary record, a lack of justification for a misbehavior report, and any specific statements by defendants relating to their motivation. See, e.g., Colon v. Coughlin, 58 F.3d at 872–73.

According to plaintiff's version of events, four days elapsed between plaintiff's purportedly protected speech—complaining to Sgt. Shibah about CO Jones not allowing plaintiff to use the inside phone—and the adverse action—CO Williams allegedly issuing a false misbehavior report. While these facts do arguably establish temporal proximity between the two acts, that alone is insufficient to satisfy plaintiff's burden at the summary judgment stage. See, e.g., Williams v. Goord, 111 F. Supp. 2d 280, 290 (S.D.N.Y. 2000) (three day gap between filing a grievance and being issued a purportedly false misbehavior report was "circumstantial

8

evidence of retaliation," but "without more, [was] insufficient to survive summary judgment"); Ayers v. Stewart, 101 F.3d 687, 1996 WL 346049, at *1 (2d Cir. 1999) (unpub. opinion) (Plaintiff's "reliance on circumstantial evidence of retaliation—namely, the proximity of the disciplinary action to his complaint where no misbehavior reports were previously filed against him—does not suffice to defeat summary judgment.");[4] Headley v. Fisher, 2010 WL 2595091, at *3 (S.D.N.Y. June 28, 2010) (evidence of temporal proximity, standing alone, not enough to survive summary judgment).

Moreover, Sgt. Shibah denies reprimanding CO Williams for allowing plaintiff to use the outside phone, and CO Williams denies being reprimanded. CO Williams denies informing CO Gayle otherwise, and CO Gayle denies informing plaintiff that CO Williams was upset with plaintiff. Plaintiff's allegation to the contrary—that CO Gayle informed plaintiff that CO Williams blamed plaintiff for Sgt. Shibah's reprimand—is inadmissible hearsay. Fed. R. Evid. 801(c), 802.

In addition, plaintiff has failed to attribute any admissible statements by CO Williams or others relating to CO Williams's motivation for issuing a misbehavior report against plaintiff. Indeed, plaintiff testified at his deposition that he had no factual basis, other than CO Gayle's inadmissible hearsay statement and plaintiff's observation of Sgt. Shibah speaking "loudly and aggressively" on the phone for his belief that Sgt. Shibah had reprimanded CO Williams. (Shevlin Decl., Ex. C at 28; Am. Compl. ¶ 21). Plaintiff further testified he was standing approximately fifteen feet away from the booth where Sgt. Shibah was using the phone, that Sgt. Shiba shut the door to the booth during her conversation, that plaintiff did not hear the entire

---

[4] Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

9

conversation, and that plaintiff did not know to whom Sgt. Shibah was speaking. (Shevlin Decl., Ex. C at 23–25).[5]

Because plaintiff must do more than raise a "metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and plaintiff has failed to do so, the Court concludes CO Williams is entitled to summary judgment.

B. Retaliation Claim Against Lt. Walsh

Plaintiff's First Amendment retaliation claim against Lt. Walsh similarly fails.

The protected speech for which plaintiff claims Lt. Walsh retaliated against him, was his "right[] not to plea[d] guilty." (Am. Compl. ¶ 25). Assuming, without deciding, that plaintiff's speech was indeed protected and that plaintiff suffered an adverse action, plaintiff has again failed to adduce facts sufficient to establish—or raise a triable question of fact regarding—a causal connection between his protected speech and the administration of a purportedly unfair and biased tier III hearing. Plaintiff claims such a causal connection is established because Lt. Walsh's administration of plaintiff's tier III hearing violated his due process rights. Such a conclusory allegation, however, is insufficient to defeat Lt. Walsh's motion for summary judgment. Moreover, as discussed further below, plaintiff has not adduced any evidence that his tier III hearing was unfair or biased.

Accordingly, Lt. Walsh is entitled to summary judgment on plaintiff's First Amendment retaliation claim.

---

[5] Plaintiff's retaliation claim becomes even more attenuated when assessed in light of the fact that CO Jones, not CO Williams, was the subject of plaintiff's complaint to Sgt. Shibah. Courts in this district have often declined to find a causal connection when the defendant is not the subject of a plaintiff's complaint. See Roseboro v. Gillespie, 791 F.Supp.2d 353, 369 (S.D.N.Y. 2011) (collecting cases).

III. Fourteenth Amendment Due Process Claim

Plaintiff claims Lt. Walsh violated plaintiff's due process rights in the course of his tier III hearing by offering plaintiff a plea deal off the record, refusing to recall a witness at plaintiff's request, coaching one of the witnesses, either not asking or re-wording questions to witnesses posed by plaintiff, not producing a complete Go Around form requested by plaintiff to be put into evidence, and by generally being biased.

Lt. Walsh argues plaintiff, as a matter of law, has not established a violation of his due process rights.

The Court agrees.

"[T]o present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001) (internal quotation omitted).

A. Liberty Interest

Prisoners subject to disciplinary proceedings have a liberty interest only when "an institution's disciplinary decision results in an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" Luna v. Pico, 356 F.3d 481, 487 n.3 (2d Cir. 2004) (quoting Sandin v. Conner, 515 U.S. 472, 484, (1995)).

No bright-line rule exists to determine at what point a prisoner's keeplock confinement rises to the level of "atypical and significant hardship." Wilkinson v. Austin, 545 U.S. 209, 221-24, (2005). Courts consider both the duration and conditions of confinement in determining whether an inmate has suffered atypical and significant hardship pursuant to a disciplinary proceeding. See Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (relevant factors in determining whether inmate endured atypical hardship include "the extent to which the

conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement") (internal quotation marks and citation omitted).

Here, although plaintiff was sentenced to 180 days of keeplock, the relevant factor for "determining whether any liberty interest was infringed" is "the actual duration of confinement," Palmer v. Richards, 364 F.3d at 66, n.4, which was 90 days.

The Second Circuit has concluded that a 101-day confinement in a special housing unit ("SHU"), with conditions only incrementally more severe than general population conditions, did not meet the "Sandin standard of atypicality." Sealey v. Giltner, 197 F.3d 578, 589 (2d Cir. 1999). The Second Circuit has also recognized that "shorter confinements under normal SHU conditions may not implicate a prisoner's liberty interest," and has stated that in order for such an interest to be triggered, the inmate's conditions must have been "more severe than the normal SHU conditions." Palmer v. Richards, 364 F.3d at 65.

The record contains no evidence that plaintiff's conditions of confinement during his keeplock sentence constituted an "atypical and significant hardship." While being questioned about his punishment, plaintiff stated, "I wasn't able to use the phones. I wasn't able to do nothing. I was just confined." (Shevlin Decl., Ex. C at 58). Plaintiff also lost packages and commissary privileges while he was confined to keeplock. There is no evidence that the conditions in plaintiff's cell worsened while he was on keeplock confinement, or that he experienced any kind of hygienic restrictions. Cf. Welch v. Bartlett, 196 F.3d 389, 393 (2d Cir. 1999) ("far inferior" hygienic conditions in SHU, including "inadequate amounts of toilet paper, soap and cleaning materials, a filthy mattress, and infrequent changes of clothes" may permit the finding of atypical and significant deprivation).

12

Because the conditions plaintiff experienced during his 90 days on keeplock did not reach the severity of "normal SHU conditions," plaintiff's keeplock confinement does not raise a liberty interest sufficient to trigger plaintiff's constitutional due process rights.

B.     Due Process

Moreover, even if the Court were to assume plaintiff's procedural due process rights were in fact implicated (i.e., that plaintiff possessed a liberty interest), plaintiff has failed as a matter of law to establish that any due process violation occurred during the course of his tier III hearing.

When an inmate's liberty interest is implicated, "[b]ecause '[p]rison disciplinary proceedings are not part of a criminal prosecution, . . . the full panoply of rights due a defendant in such proceedings does not apply." Williams v. Menifee, 331 F. App'x 59, 60 (2d Cir. 2009) (summary order) (quoting Wolff v. McDonnell, 418 U.S. 539, 556, (1974)). The procedural due process afforded to a prisoner charged with a violation in a disciplinary proceeding consists of: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Williams v. Menifee, 331 F. App'x at 60 (quoting Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454, (1985)).

The record here reflects that plaintiff in fact was given advance written notice of the disciplinary charges against him, was permitted to call witnesses and present documentary evidence in his defense, and was provided a written statement of the evidence Lt. Walsh relied on and the reasons for the disciplinary sentence imposed. On its face, plaintiff received all the process he was due.

13

Nonetheless, plaintiff claims his due process rights were violated by various alleged procedural defects that occurred in the course of his tier III hearing.

1. Off-the-Record Plea Offer

Plaintiff claims the failure to record the alleged plea bargain prior to beginning the tier III hearing violated the requirement that the hearing be electronically recorded.

Such an allegation, however, does not provide a basis for a due process claim. "[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983." Patterson v. Coughlin, 761 F.2d 886, 891 (2d Cir. 1985). Because the rule that disciplinary hearings be electronically recorded is derived from state law, and is not required as a matter of constitutional procedural due process, plaintiff's claim that the failure to adhere to the recording requirement violated his constitutional rights is baseless.

2. Refusing to Recall a Witness

Although "the right to present evidence is basic to a fair hearing," the U.S. Supreme Court has recognized that "the inmate's right to present witnesses is necessarily circumscribed by the penological need to provide swift discipline in individual cases." Ponte v. Real, 471 U.S. 491, 495 (1985). The Second Circuit has also held that "a hearing officer does not violate due process by excluding irrelevant or unnecessary testimony." Kalwasinski v. Morse, 201 F.3d 103, 109 (2d Cir. 1999). "Prison officials must have the necessary discretion to keep the hearing within reasonable limits," Wolff v. McDonnell, 418 U.S. at 566, with the caveat that said officials may be required to explain their reasoning for doing so, in a limited manner, either as part of the administrative record or in a future court proceeding based on an inmate's claim that such a denial deprived them of due process. Ponte v. Real, 471 U.S. at 497.

Plaintiff claims Lt. Walsh refused to recall Sgt. Shibah after she had already testified during plaintiff's hearing. That claim, however, is belied by the list of witnesses on the Hearing Record Sheet, which plaintiff signed, and which indicates Sgt. Shibah was indeed called to testify twice during the hearing. (Walsh Decl. Ex. H).

Plaintiff claims he wanted to question Sgt. Shibah further regarding CO Williams allowing plaintiff to use the yard phone, a topic about which he had already had the opportunity to question Sgt. Shibah. (Shevlin Decl., Ex. C at 44–46). Lt. Walsh believed that such a line of questioning was "not material to the question of whether plaintiff was guilty of the charges in the April 30, 2014 [misbehavior report]." (Walsh Decl. ¶ 29). A witness's irrelevance is grounds for refusing to call a witness. Kalwasinski v. Morse, 201 F.3d at 109. Moreover, Lt. Walsh's purported decision not to recall Sgt. Shibah "to keep the hearing within reasonable limits," Wolff v. McDonnell, 418 U.S. at 566, deserves deference, absent a showing of abuse of discretion. Scott v. Kelly, 962 F.2d 145, 147 n.2 (2d Cir. 1992). Accordingly, although the record indicates Sgt. Shibah likely was recalled during plaintiff's tier III hearing, even if she was not, such a decision by Lt. Walsh would have been entirely proper.

Plaintiff further argues Lt. Walsh's failure to give him a written explanation regarding the reason Sgt. Shibah was not recalled in accordance with 7 NYCRR 254.5, violated plaintiff's due process rights. This argument fails because, as discussed above, "a state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983." Patterson v. Coughlin, 761 F.2d at 891. While a prison official may eventually be required to give a reason for not calling a witness in order to establish that a plaintiff's due process rights were not violated, see Ponte v. Real, 471 U.S. at 497, the necessity for a written notice is a state law requirement, which is not alone actionable under Section 1983.

15

Accordingly, plaintiff can assert no due process claim for not being given a written reason for why Sgt. Shibah was not recalled.

      3.      <u>Coached Witness</u>

Plaintiff alleges an off-the-record meeting between Lt. Walsh and Sgt. Shibah took place, during which Sgt. Shibah was coached by Lt. Walsh and her testimony influenced. This contention is based "[u]pon [plaintiff's] information and belief." (Pl.'s Aff. ¶ 5). But plaintiff makes no further claim as to how he has personal knowledge about what occurred at this meeting. Lt. Walsh, on the other hand, claims he spoke with Sgt. Shibah in response to her inquiring why she was being recalled to testify a second time. Lt. Walsh states he explained to Sgt. Shibah that he was allowing plaintiff to call her again in order to be thorough.

An affidavit or declaration submitted in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "The Rule's requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'" <u>Patterson v. Cty. of Oneida, N.Y.</u>, 375 F.3d 206, 219 (2d Cir. 2004).

Thus, plaintiff's claim that Lt. Walsh coached Sgt. Shibah, made only upon information and belief, is insufficient to raise a genuine issue of fact able to withstand summary judgment.

      4.      <u>Re-wording or Refusing to Pose Questions</u>

Plaintiff also claims his due process rights were violated when Lt. Walsh refused to ask, or re-worded, some of plaintiff's questions for the witnesses he called. The only specific line of questioning plaintiff claims Lt. Walsh refused to ask relates to questioning CO Williams about

other inmates present with plaintiff when he was stopped by CO Williams on April 30, 2014. (Am. Compl. Ex. A ¶ 5).[6]

"While inmates do have the right to question witnesses at their disciplinary hearings, that right is not unlimited and its contours are under the discretion of prison officials." Rivera v. Wohlrab, 232 F. Supp. 2d 117, 125 (S.D.N.Y. 2002) (citing Wolff v. McDonnell, 418 U.S. at 566). As discussed above, prison officials have discretion to limit witnesses "on the basis of irrelevance or lack of necessity." Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 (2d Cir. 1991). Lt. Walsh's position is that the issue of the presence of other inmates was immaterial to the question of whether plaintiff was guilty of the violations with which he was charged in the misbehavior report, and consequently was irrelevant. (Walsh Decl. ¶ 31). The Court agrees and concludes Lt. Walsh's decision fell comfortably within his "necessary discretion to keep the hearing within reasonable limits." Wolff v. McDonnell, 418 U.S. at 566.

    5. "Go Around" Form

Plaintiff claims he was denied due process when a second page of a Go Around form was not submitted into evidence at his tier III hearing.

An inmate's right to "present documentary evidence in his defense," Williams v. Menifee, 331 F. App'x at 60, must be balanced against the fact that "prison authorities should be vested with 'broad discretion,' and that prison authorities may deny an inmate's request to present witnesses or evidence on the basis of considerations such as 'irrelevance' or 'lack of

---

[6] When questioned at his deposition about specific questions Lt. Walsh did not ask or re-worded, plaintiff was unable to identify any such questions. (Shevlin Decl., Ex. C at 43–44). Subsequent to his deposition, plaintiff was given the opportunity to allege questions Lt. Walsh either refused to ask or re-worded if plaintiff was later able to recall any such questions. (Id. at 44). The record, however, remains devoid of any such averments by plaintiff.

necessity.'" Rossi v. Stevens, 2008 WL 4452383, at *10 (S.D.N.Y. Sept. 30, 2008) (quoting Wolff v. McDonnell, 418 U.S. at 566).

According to Lt. Walsh, the complete Go Around form could not be located, and, thus, he credited plaintiff's description of it, in that it showed that plaintiff signed up to use the inside phone twice on the day in question. Having credited plaintiff's characterization of the document as truthful, there was no necessity to enter the full document into evidence.

Even if Lt. Walsh refused to enter the Go Around form into evidence, doing so would have been within his right based on his determination that it was irrelevant. Plaintiff's own deposition testimony acknowledges the document "had no bearings [sic] on" the issues raised in the misbehavior report. (Shevlin Decl., Ex. C at 55).

    6.  Hearing Officer Bias

Prisoners are entitled to have their disciplinary charges reviewed by an unbiased hearing officer. Russell v. Selsky, 35 F.3d 55, 59 (2d Cir. 1994). Claims of hearing officer bias are common in Section 1983 cases by inmate plaintiffs, and when they are based on purely conclusory allegations, they are routinely dismissed. See, e.g., Vogelfang v. New York State Dep't of Corrs., 2010 WL 3895493, at * 1 (S.D.N.Y. Oct. 4, 2010). "Administrators serving as adjudicators are presumed to be unbiased." Allen v. Cuomo, 100 F.3d 253, 259 (2d Cir. 1996). Moreover, "prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts," and "the degree of impartiality required of prison officials does not rise to the level of that required of judges generally." Id. An inmate's own subjective belief that a hearing officer was biased is insufficient to establish a constitutional violation. See Francis v. Coughlin, 891 F.2d 43, 47 (2d Cir. 1989).

18

Here, the claim that Lt. Walsh was unfair and biased is based on plaintiff's wholly conclusory statements. Plaintiff has failed to establish any procedural defect or adduce any other evidence that might suggest Lt. Walsh was biased against him.

In sum, plaintiff's due process claim based on the fairness of his tier III hearing fails as a matter of law.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #62) and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: September 25, 2017
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge